UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | | |
|---|---|---|
| BRENDA C., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No. 1:20-cv-00215-SEB-MPB |
| | ) | |
| ANDREW M. SAUL, | ) | |
| | ) | |
| Defendant. | ) | |

**REPORT AND RECOMMENDATION ON
APPROPRIATE DISPOSITION OF THE ACTION**

This matter was referred to the Magistrate Judge under 28 U.S.C. § 636(b)(1)(B) and Fed. R. Civ. P. 72(b) for a Report and Recommendation as to its appropriate disposition. (Docket No. 9). Plaintiff Brenda C.[1] seeks judicial review of the Social Security Administration's final decision deeming her ineligible for Supplemental Security Income (SSI). The matter is fully briefed. (Docket No. 10, Docket No. 15, Docket No. 16). It is recommended that the District Judge **REMAND** the decision of the Deputy Commissioner of the Social Security Administration finding that Plaintiff Brenda C. is not disabled, pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration, consistent with this opinion.

---

[1] To protect the privacy interests of claimants for Social Security benefits, consistent with the recommendation of the Court Administration and the Case Management Committee of the Administrative Office of the United States Courts, the Southern District of Indiana has opted to use only the first name and last initial of non-governmental parties in its Social Security judicial review opinions.

## I.   PROCEDURAL BACKGROUND

On September 9, 2016, Brenda C. filed an application for SSI, alleging a disability onset date of May 1, 2008. (Docket No. 7-2 at ECF p. 13). Her applications were initially denied on November 16, 2016, and upon reconsideration on March 29, 2017. Administrative Law Judge Daniel J. Majes conducted a hearing on October 5, 2018, at which Brenda C., represented by counsel, and a vocational expert ("VE"), appeared and testified. (Docket No. 7-1 at ECF pp. 43–66). The ALJ issued a decision on January 14, 2019, concluding that Brenda C. was not entitled to receive benefits. (Docket No. 7-1 at ECF pp. 13–30). The Appeals Council denied review on November 21, 2019. (Docket No. 7-1 at ECF pp. 4–6). On January 20, 2020, Brenda C. timely filed this civil action, asking the court pursuant to 42 U.S.C. § 405(g) to review the final decision of the Commissioner denying her benefits. (Docket No. 1 at ECF p. 1). Jurisdiction is proper according to 42 U.S.C. § 1383(c).

## II.   STANDARD OF REVIEW

Under the Social Security Act, a claimant may be entitled to benefits only after she establishes that she is disabled. Disability is defined as the "inability to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). To be found disabled, a claimant must demonstrate that her physical or mental limitations prevent her from doing not only her previous work but any other kind of gainful employment which exists in the national economy, considering her age, education, and work experience. 42 U.S.C. § 423(d)(2)(A).

The Commissioner employs a five-step sequential analysis to determine whether a claimant is disabled. At step one, if the claimant is engaged in substantial gainful activity, she is not disabled despite her medical condition and other factors. 20 C.F.R. § 404.1520(a)(4)(i).[2] At step two, if the claimant does not have a "severe" impairment that also meets the durational requirement, she is not disabled. 20 C.F.R. § 404.1520(a)(4)(ii). A severe impairment is one that "significantly limits [a claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 404.1520(c). At step three, the Commissioner determines whether the claimant's impairment or combination of impairments meets or medically equals any impairment that appears in the Listing of Impairments, 20 C.F.R. § Part 404, Subpart P, Appendix 1, and whether the impairment meets the twelve-month duration requirement; if so, the claimant is deemed disabled. 20 C.F.R. § 404.1520(a)(4)(iii).

If the claimant's impairments do not meet or medically equal one of the impairments on the Listing of Impairments, then her residual functional capacity will be assessed and used for the fourth and fifth steps. *See* 20 C.F.R. § 404.1520(a)(4)(iv)-(v). Residual functional capacity ("RFC") is the "maximum that a claimant can still do despite [her] mental and physical limitations." *Craft v. Astrue*, 539 F.3d 668, 675–76 (7th Cir. 2008) (citing 20 C.F.R. § 404.1545(a)(1); Social Security Ruling ("SSR") 96-8p). At step four, if the claimant is able to perform her past relevant work, she is not disabled. 20 C.F.R. § 404.1620(a)(4)(iv). At the fifth and final step, it must be determined whether the claimant can perform any other work, given her RFC and considering her age, education, and past work experience. 20 C.F.R. §

---

[2] The Code of Federal Regulations contains separate, parallel sections concerning Disability Insurance Benefits ("DIB") and Supplemental Security Insurance ("SSI"), which are identical in most respects. *See, e.g.*, 20 C.F.R. § 416.920(a)(4)(i). The court will take care to detail any substantive differences that are applicable to the case but will not always reference the parallel section.

3

404.1520(a)(4)(v). The claimant is not disabled if she can perform any other work in the relevant economy. *Id.*

The combined effect of all the impairments of the claimant shall be considered throughout the disability determination process. 42 U.S.C. § 423(d)(2)(B). The burden of proof is on the claimant for the first four steps; it then shifts to the Commissioner for the fifth step. *Young v. Sec'y of Health & Human Servs.*, 957 F.2d 386, 389 (7th Cir. 1992).

When an applicant appeals an adverse benefits decision, this court's role is limited to ensuring that the ALJ applied the correct legal standards and that substantial evidence exists for the ALJ's decision. *Barnett v. Barnhart*, 381 F.3d 664, 668 (7th Cir. 2004) (citation omitted). For the purpose of judicial review "[s]ubstantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted). Because the ALJ "is in the best position to determine the credibility of witnesses," *Craft*, 539 F.3d at 678, this court must accord the ALJ's credibility determination "considerable deference," overturning it only if it is "patently wrong." *Prochaska v. Barnhart*, 454 F.3d 731, 738 (7th Cir. 2006) (quotations omitted).

If the ALJ committed no legal error and substantial evidence exists to support the ALJ's decision, the court must affirm the denial of benefits. *Barnett*, 381 F.3d at 668. When an ALJ's decision is not supported by substantial evidence, a remand for further proceedings is typically the appropriate remedy. *Briscoe ex rel. Taylor v. Barnhart*, 425 F.3d 345, 355 (7th Cir. 2005). An award of benefits "is appropriate only where all factual issues have been resolved and the record can yield but one supportable conclusion." *Id.* (citation omitted).

### III. FACTUAL BACKGROUND

When Brenda C. filed, she alleged she could no longer work because of a learning disability, left hip problem, and leg length discrepancy.[3]

The ALJ followed the five-step sequential evaluation set forth by the SSA in 20 C.F.R. § 416.920(a) and ultimately concluded that Brenda C. was not disabled. (Docket No. 7-1 at ECF p. 30). At step one, the ALJ found that Brenda C. had not engaged in substantial gainful activity[4] since September 9, 2016, the application date. (Docket No. 7-1 at ECF p. 15). At step two, the ALJ found that Brenda C. had the following "severe impairments: degenerative joint disease, a leg length discrepancy, degenerative disc disease, obesity, depression, anxiety, and an intellectual disorder." (Docket No. 7-1 at ECF p. 3). At step three, the ALJ found that Brenda C. did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments. (Docket No. 7-1 at ECF p. 4). After step three but before step four, the ALJ concluded:

> After careful consideration of the entire record, I find the claimant has the residual functional capacity to perform a range of light work (20 CFR 416.967(b)) defined as follows: sitting up to thirty minutes at one time and six hours during an eight-hour workday; standing and walking up to fifteen minutes at one time and two hours during an eight-hour workday; lifting, carrying, pushing, and pulling twenty pounds occasionally and ten pounds frequently; occasionally climbing ramps and stairs, stooping, kneeling, crouching, and crawling; no climbing ladders, ropes, or scaffolds; simple routine tasks with the ability to sustain the attention and concentration necessary to carry out work-like tasks with reasonable pace and persistence; no significant change in job duties from day to day; and

---

[3] The relevant evidence of record is amply set forth in the parties' briefs, as well as the ALJ's decision and need not be repeated here. Specific facts relevant to the court's disposition of this case are discussed below.

[4] Substantial gainful activity is defined as work activity that is both substantial (i.e., involves significant physical or mental activities) and gainful (i.e., work that is usually done for pay or profit, whether or not a profit is realized). 20 C.F.R. § 416.972(a).

>no assembly line or production rate pace, but more goal-oriented work.

(Docket No. 7-1 at ECF p. 20). At step four, the ALJ found that Brenda C. was unable to perform her past relevant work as a fast food worker. (Docket No. 7-1 at ECF p. 28). At step five, considering Brenda C.'s age, education, work experience, and RFC, as well as the VE's testimony, the ALJ concluded that Brenda C. could have performed other work through the date of the decision with jobs existing in significant numbers in the national economy. (Docket No. 7-1 at ECF p. 29).

## IV. DISCUSSION

Brenda C. raises three assignments of error: (1) that the ALJ erred in giving significant weight to the opinion of the consultative examiner, but ignoring critical findings by the doctor in the RFC assessment; (2) that the ALJ failed to properly address her moderate limitations in maintaining concentration, persistence or pace in his RFC and hypothetical to the VE; and (3) that the ALJ relied too heavily on Brenda C.'s limited activities of daily living and made inconsistent and contradictory findings regarding her functional abilities and past work. Because the first two issues are greatly intertwined the court addresses them together.

1. **Consultative Examiner's, Dr. McCoy, Findings and Concentration, Persistence, and Pace within the ALJ's Residual Functional Capacity and hypotheticals to the VE.**

Brenda C. argues that the ALJ gave Dr. McCoy, a consultative examiner, significant weight, but then failed to discuss several of Dr. McCoy's findings in his decision and failed to account for those findings in his RFC assessment and hypothetical to the Vocational Expert, specifically those limitations related to the ALJ's finding of moderate difficulties with concentration, persistence, and pace. The specific findings of Dr. McCoy that Brenda C. argues were not included within the decision were that that Dr. McCoy found that Brenda C.'s

6

depression and cognitive deficits may interfere with the ability to attend to simple, repetitive tasks continuously for a two-hour period; and that her current cognitive skills may require some assistance with supervision and with managing funds. (Docket No. 7-5 at ECF p. 24). Brenda C. also points out that Dr. McCoy noted that her work pace is slow and that her current cognitive skills may require some assistance with supervision and with managing funds. *Id.* Brenda C. argues that the ALJ failed to discuss these findings and failed to include limitations that would account for these findings in his hypothetical to the Vocational Expert and his ultimate RFC assessment. Finally, Brenda C. points to an exchange during her hearing with the ALJ, in which the VE testified that if Brenda C. required supervision above that in which other people performing the same job require, then it is going to be some kind of accommodation and therefore does not comport with competitive employment. (Docket No. 7-1 at ECF p. 63). Likewise, the VE also testified that the off-task behavior threshold is approximately ten percent, and anything above that would jeopardize competitive employment. (*Id.*)

      The Commissioner argues that the ALJ reasonably gave "significant" weight to Dr. McCoy's opinion and that the consultative examiner's limits were substantially accommodated by the ALJ's mental residual functional capacity limits. (Docket No. 15 at ECF p. 13). The Commissioner further argues that Brenda C. ignores that the ALJ gave greater weight to the opinions of Drs. Hill and Unversaw, the state agency psychologists, thus explaining any discrepancy between the assessed RFC and Dr. McCoy's opinion. (*Id.*). Finally, the Commissioner argues that there is no true discrepancy between Dr. McCoy's opinion and the assessed RFC. (Docket No. 15 at ECF p. 14).

      As an initial matter, Brenda C. incorrectly argues that because the ALJ did not give Dr. McCoy's "opinion controlling weight, then he [was required to] provide 'good reasons' for

7

discounting it." (Docket No. 10 at ECF p. 19). Dr. McCoy had no treatment relationship with Plaintiff and provided a one-time examination at the ALJ's request. (Docket No. 7-1 at ECF p. 13; Docket No. 7-5 at ECF pp. 22–29). As such, the ALJ was not required to provide "good reasons" for discounting Dr. McCoy's opinion when the ALJ did not assign his opinion controlling weight. *See Campbell v. Astrue*, 627 F.3d 299, 306 (7th Cir. 2010) ("A treating physician's opinion is entitled to 'controlling weight'…") (citations omitted).

The general rules are simple enough. An ALJ "must confront the evidence that does not support his conclusion and explain why it was rejected." *Indoranto v. Barnhart*, 374 F.3d 470, 474 (7th Cir. 2004). Then, both the RFC and the hypothetical question put by the ALJ to the VE "must fully set forth the claimant's impairments to the extent that they are supported by the medical evidence in the record." *Herron v. Shalala*, 19 F.3d 329, 337 (7th Cir. 1994). "Among the mental limitations that the VE must consider are deficiencies of concentration, persistence, or pace." *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015) (citing *Yurt v. Colvin*, 758 F.3d 850, 857 (7th Cir. 2014)). "Although it is not necessary that the ALJ use the precise terminology of 'concentration,' 'persistence,' or 'pace,' we will not assume that a VE is apprised of such limitations unless he or she has independently reviewed the medical record." *Id.* at 814 (citing *Yurt*, 758 F.3d at 857).

The ALJ's discussion of Dr. McCoy's opinion does not address Dr. McCoy's findings that Brenda C. may be unable to attend to a simple, repetitive task continuously for a two-hour period. Moreover, he does not explain how Dr. McCoy's finding that Brenda C. has a slow work pace, which he did acknowledge in his decision, corresponds with his RFC that includes "reasonable pace and persistence." It is possible, as the Commissioner argues, that in assigning great weight to Drs. Hill and Unversaw he discounted these portions of Dr. McCoy's opinions. It is also possible

8

that the ALJ found these specific findings unhelpful because, as the Commissioner argues, Dr. McCoy did not outline the precise conditions under which Brenda C. would be able to function. But, we do not know because these are the Commissioner's arguments, not the ALJ's. We cannot look for explanations outside of the ALJ's decision to support the ALJ's conclusion. *See Parker v. Astrue*, 597 F.3d 920, 922 (7th Cir. 2010) ("[I]n [relying on reasoning beyond the ALJ's the Commissioner] violated the *Chenery* doctrine, which forbids an agency's lawyers to defend the agency's decision on grounds that the agency itself had not embraced.") (internal citations omitted).

It is well established that an ALJ's RFC and hypotheticals to the vocational examiner must include all of the claimant's limitations. As noted above, the ALJ did assign Brenda C.'s RFC with a number of mental limitations, including: (1) simple routine tasks with the ability to sustain the attention and concentration necessary to carry out work-like tasks with reasonable pace and persistence; (2) no significant change in job duties from day to day; and (3) no assembly line or production rate pace, but more goal-oriented work. The Seventh Circuit has "previously rejected similar formulations of a claimant's limitations because there is no basis to suggest that eliminating jobs with strict production quotas or a fast pace may serve as a proxy for including a moderate limitation on concentration, persistence, and pace." *DeCamp v. Berryhill*, 916 F.3d 671, 675–76 (7th Cir. 2019) (citing *Moreno v. Berryhill*, 882 F.3d 722, 730 (7th Cir. 2018)); *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 698 (7th Cir. 2016)). The Seventh Circuit found in *Varga* that the ALJ's failure to define "fast paced production" was problematic. 794 F.3d at 815. In *Martin v. Saul*, 950 F.3d 369, 374 (7th Cir. 2020) (citations omitted), the Seventh Circuit explained the "holding in *Varga* did not root itself in vagueness, though. To be sure, we noted that the phrase 'fast paced production' had more than one meaning. But we reversed because the ALJ failed to include the claimant's significant problems concentrating in the RFC determination." Here, the ALJ failed to

9

address several of Dr. McCoy's findings related to Brenda C.'s shortcomings with concentration, persistence, and pace.

Moreover, the undersigned finds an evidentiary basis in the record for the consultative examiner's assessments identified above, such that it is not clear that the error was harmless. The psychological consultative examiner observed that Brenda C.'s responses to the mental status exam indicated that several of her abilities were below average, including her immediate and remote memory, working memory and serial ability, and verbal abilities. Accordingly, further consideration of Brenda C.'s RFC is also necessary on remand to assure that Brenda C.'s full limitations are adequately conveyed to the VE and incorporated into the RFC.

**2. Activities of Daily Living**

Brenda C.'s final issue is with regards to the ALJ's assessment of her limited activities of daily living. Brenda C. does not deny that the ALJ addressed each regulatory factor of SSR 16-3p in his decision, but that his justifications for dismissing the credibility of her statements are patently erroneous. She argues that the ALJ placed "undue weight" on her activities of daily living and that the decision contains contradictions and inconsistencies regarding her ability to function and her work history. The Commissioner responds that the ALJ did not impermissibly equate limited daily activities with ability to sustain full time work, but instead merely noted that the claimant's activities were at odds with claims of disabling functional limitations.

The court gives the ALJ's credibility finding "special deference" overturning it only if it is "patently wrong." *Summers v. Berryhill*, 864 F.3d 523, 528 (7th Cir. 2017). Brenda C. argues that the ALJ's credibility finding is internally inconsistent because the ALJ simultaneously finds that Brenda C. has led an independent lifestyle and that she is reliant on her mother and boyfriend. (Docket No. 7-1 at ECF pp. 25–26). The ALJ also found that Brenda C. has been able to obtain

10

and maintain work activity in the past, but likewise finds that each job was relatively short-lived in nature, and that it was on a part-time basis. (Docket No. 7-1 at ECF pp. 18, 23, 25).

I find that these conclusions do not amount to patent error. As to the contention that the ALJ erroneously concluded that Brenda C. has led an independent lifestyle, on one hand, and that she is reliant on her mother and boyfriend, on the other, those inconsistencies existed in the record. (Docket No. 7-1 at ECF p. 18) (discussing ability to adapt or manage oneself and pointing to records where claimant at times reported she was reliant on others, could not drive, or handle her own finances, but at other times reported that she was able to take care of her basic needs and assist with laundry, dishes, cooking, and cleaning). The ALJ's credibility assessment acknowledged this by stating that "there are inconsistencies in regards to the claimant's allegations of severe limitations and the record as a whole." (Docket No. 7-1 at ECF p. 25).

And, as to the contention that the ALJ erroneously drew conclusions about Brenda C's ability to work full time based on part-time employment, I find that Brenda C. overlooks the thrust of the ALJ's finding on this point. Plaintiff's demonstrated ability to work was undeniably relevant. *See* 20 C.F.R. §§ 416.929(c)(3)(i), (vii); SSR 16-3p, 2016 WL 1119029, at \*6 (Mar. 16, 2016) (ALJ should consider claimant's "prior work record and efforts to work" in assessing subjective symptoms); *Berger v. Astrue*, 516 F.3d 539, 546 (7th Cir. 2008) ("Although the diminished number of hours per week indicated that [the claimant] was not at his best, the fact that he could perform some work cuts against his claim that he was totally disabled."). As the ALJ explained, Brenda C. worked at McDonalds for a year, in a position that exceeded the assessed RFC, but left because her coworkers made fun of her. (Docket No. 7-1 at ECF pp. 23–25). The ALJ did not equate Brenda C.'s ability to work at McDonalds for a year with the ability to work on a full-time basis, but

11

concluded that this work history was not consistent with her allegations of limitations. There was no patent error.

## V.  CONCLUSION

For all these reasons, the Magistrate Judge recommends that the Court grant Plaintiff's brief in support of appeal (Docket No. 10) and that this case be remanded pursuant to sentence four of 42 U.S.C. § 405(g) for further consideration, consistent with this opinion.

Any objections to the Magistrate Judge's Report and Recommendation shall be filed with the Clerk in accordance with 28 U.S.C. § 636(b)(1). Failure to file timely objections within fourteen days after service shall constitute waiver of subsequent review absent a showing of good cause for such failure.

**SO RECOMMENDED** the 26th day of January, 2021.

_____
Matthew P. Brookman
United States Magistrate Judge
Southern District of Indiana

Served electronically on all ECF-registered counsel of record.